UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
ALEC SOYBEL, et al.

Plaintiffs,

-against-

THE CITY OF NEW YORK, et al.

Defendants.
---------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
No. 21-cv-1846 (CBA) (MMH)

**AMON, United States District Judge:**

On March 15, 2024, I partially granted Plaintiffs' motion to reconsider my decision to dismiss their claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. (ECF Docket Entry ("D.E.") # 76 ("M&O") 1-2.) Although I determined that the claims of Boris Shapiro, Savas Tsitiridis, and Guy Roberts (together, "Remaining Plaintiffs") against Defendants City of New York ("City") and New York Taxi & Limousine Commission ("TLC") (together, "Remaining Defendants") were not time barred, I dismissed Remaining Plaintiffs' claims for RICO treble damages. (Id.) I directed Remaining Plaintiffs to show cause as to why their claims for equitable relief were not also subject to dismissal. (Id. 21.) Remaining Plaintiffs and Remaining Defendants have since submitted memoranda of law as to the availability of equitable remedies under RICO's private cause of action, as established by 18 U.S.C. § 1964(a). (D.E. # 77 ("Pls. Mem. of Law"); D.E. # 79 ("Defs. Mem. of Law").) For the following reasons, I DISMISS Remaining Plaintiffs' claim for equitable relief.

## BACKGROUND

I assume familiarity with the factual details of this case and will summarize only the procedural background relevant to the instant motion.

### I. March 2024 Order on Reconsideration

On March 15, 2024, I addressed a motion made by Plaintiffs to reconsider my decision to dismiss their Amended Complaint as time barred. (See D.E. # 72 ("Pls. Mot.").) I had previously determined that under American Pipe and Constr. Co. v. Utah, 414 U.S. 538 (1974), the statute of limitations on Plaintiffs' RICO claims was tolled from January 2017 to September 21, 2017. (M&O 3-7.) The latter date marked the New York Supreme Court's dismissal of the fraud-related claims in Singh v. City of New York, Index No. 701402/2017 (N.Y. Sup. Ct. 2017), a class action that was factually similar to the instant case. (Id.) But this nine-month tolling period fell "six or seven months short of the tolling period Plaintiffs would need to render their claims timely." (Id. 4.) Thus, I dismissed Plaintiffs' Amended Complaint as time barred. (Id.)

Plaintiffs moved for reconsideration, arguing that the proper end date for tolling was not September 21, 2017, but rather either May 14, 2020, or December 30, 2020. (Pls. Mot. 6, 8-9.) Upon reconsideration, I determined that December 30, 2020, was the proper end date for the tolling period. (M&O 8.) Thus, "Plaintiffs were well within the four-year statute of limitations for their RICO claims." (Id. 10.)

As a result, I partially granted Plaintiffs' motion for reconsideration. I determined that only a subset of Plaintiffs' claims in this action – those made by plaintiffs who purchased medallions at the auctions at issue in Singh and made against the defendants who were named in Singh – were equitably tolled under American Pipe. (Id. 11.) Thus, I dismissed all claims except those made by Remaining Plaintiffs against Remaining Defendants. Then, based on RICO standing and municipal immunity grounds, I dismissed Remaining Plaintiffs' claims for treble damages against Remaining Defendants. (Id.) Moreover, I found that to whatever extent Remaining Plaintiffs' claims would withstand the motion to dismiss, Remaining Plaintiffs could only bring their suits in their individual capacities, rather than on behalf of a class. (Id. 11-12.)

I left open one issue: whether I should dismiss Remaining Plaintiffs' claims for equitable relief, including disgorgement. I ordered Remaining Plaintiffs to show cause as to "why their other requests for relief based on their RICO claims, including declaratory relief and disgorgement . . . should not also be subject to dismissal on the basis that their aim was to punish past conduct rather than 'prevent[ing] and restrain[ing]' future conduct and thus outside of the scope of my powers under the RICO statute." (M&O 21 (quoting 18 U.S.C. § 1964(a)).)

**II. Briefing on Availability of Equitable Remedies**

On April 15, 2024, Remaining Plaintiffs filed a memorandum of law arguing that they could seek disgorgement of ill-gotten gains under RICO. (Pls. Mem. of Law.) They contended that the text and legislative history of the RICO statute authorize a broad set of equitable remedies, including disgorgement. (Id. 2-4.) They noted that Supreme Court precedent addressing similar statutes "broadly authorizes disgorgement of any and all ill-gotten gains." (Id. 4-7 (citing, inter alia, Porter v. Warner Holding Co., 328 U.S. 395 (1946); Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288 (1960).) Remaining Plaintiffs emphasized that disgorgement is an equitable remedy (id. 7-11), and argued that Chevron Corp. v. Donziger, 833 F.3d 74, 138 (2d Cir. 2016), and Liu v. SEC, 591 U.S. 71 (2020), signal our Circuit's and the Supreme Court's endorsements of the use of "[a]ll" equitable powers under RICO. (Pls. Mem. of Law 15-17.) They asked that at minimum, I reserve ruling on the availability of disgorgement because it is a "fact-laden" issue. (Id. 17-19.)

On May 31, 2024, Remaining Defendants filed a responsive memorandum of law, in which they argued that the statutory text of RICO precludes the provision of disgorgement, which is an "inherently backward-looking" remedy. (Defs. Mem. of Law 3.) They relied on United States v. Carson, 52 F.3d 1173 (2d Cir. 1995), which they claimed clearly forecloses disgorgement as a

remedy in this case. (Id. 4-7.) Remaining Defendants sought to distinguish Porter and Mitchell as applying to fundamentally different statutes and pointed out that the Supreme Court had "expressly cautioned" parties against using these cases to "imply the authorization to grant equitable monetary relief in other statutory contexts." (Id. 7-8 (citing, inter alia, AMG Capital Mgmt., LLC, v. FTC, 593 U.S. 67 (2021).) They disputed that Liu and Donziger broadly endorsed the use of all equitable remedies in all RICO cases. (Id. 10-12.) Finally, they argued that Remaining Plaintiffs' reference to the lack of alternative remedies constituted an attempt to "[e]nd [r]un" Remaining Defendants' municipal immunity from damages under RICO. (Id. 13-14.)

For the following reasons, I find that on the pleadings, disgorgement is not available to Remaining Plaintiffs.[1] Therefore, I dismiss the remainder of Remaining Plaintiffs' claims.

## DISCUSSION

### I. RICO Only Grants District Courts Jurisdiction to Issue Forward-Looking Remedies

When district courts exercise subject-matter jurisdiction granted by Congress, they may not "disregard such limits as have been imposed by . . . Congress." Cangemi v. United States, 13 F.4th 115, 135 (2d Cir. 2021) (internal quotation omitted). "[T]he text and structure of the statutory scheme at issue can . . . restrict the court's jurisdiction in equity." AMG, 593 U.S. at 79 (internal quotation and alteration omitted); see Conboy v. AT&T Corp., 241 F.3d 242, 255 (2d Cir. 2001) (holding that either through saying so directly or via a "necessary and inescapable inference," Congress can limit the set of equitable powers a district court can use when enforcing a particular

[1] Remaining Plaintiffs say they seek "recission, restitution and disgorgement." (Pls. Mem. of Law 2.) But in their memorandum of law, Remaining Plaintiffs never discuss rescission independently of restitution and disgorgement. And they treat restitution and disgorgement as interchangeable. (See id. 9 (characterizing disgorgement as "a form of restitution" (internal quotation omitted)).) The Supreme Court agrees with this treatment. See Liu, 591 U.S. at 79 (describing "restitution" and "disgorgement" as "different names" for the same remedy). Moreover, Remaining Plaintiffs' memorandum of law makes no reference to the declaratory relief that they sought in their complaint, even though I asked Remaining Plaintiffs to explain why that request should not also be subject to dismissal. (See M&O 21.) Thus, for clarity, I refer to Remaining Plaintiffs' desired remedy as "disgorgement" throughout this opinion.

statute (internal quotation omitted)); see also United States v. Philip Morris USA, Inc., 396 F.3d 1190, 1197 (D.C. Cir. 2005) (holding that a district court "may only assume broad equitable powers when the statutory or Constitutional grant of power is equally broad"). Accordingly, the issue is not whether disgorgement falls within the ambit of equitable remedies generally; instead, it is whether ordering disgorgement in this case would fit within the set of remedies that Congress established in 18 U.S.C. § 1964(a).

To determine what remedies § 1964(a) authorizes, I begin with the statutory text. See United States v. Bedi, 15 F.4th 222, 226 (2d Cir. 2021). The statute reads as follows:

> The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

18 U.S.C. § 1964(a). In their memorandum of law, Remaining Plaintiffs emphasize the words "issuing appropriate orders, including but not limited to." (Pls. Mem. of Law 2.) Remaining Plaintiffs take this language to mean that "the scope of possible equitable remedies available to a [d]istrict [c]ourt in response to RICO violations is broad." (Id. 3.) But the rest of the provision limits the scope of potential remedies. § 1964(a) only authorizes district courts to "prevent and restrain" violations. Remaining Defendants interpret "prevent and restrain" to mean that § 1964(a) only gives district courts the power to issue remedies that are "forward-looking and intended to address future conduct." (Defs. Mem. of Law 3.) The Second Circuit has adopted that interpretation. In Carson, this Circuit held that "the jurisdictional powers in § 1964(a) serve the goal of foreclosing future violations, and do not afford broader redress." 52 F.3d at 1182; cf.

United States v. Sasso, 215 F.3d 283, 291 (2d Cir. 2000) (holding that requiring contribution into a "fund that plainly [was] to be used to prevent future violations" was permissible under § 1964(a) because the purpose of the fund was "unquestionably forward-looking").[2] Thus, the Carson court held that a plaintiff could only pursue disgorgement that was "part of an effort to 'prevent and restrain' future conduct." 52 F.3d at 1182.

Faced with Carson, Plaintiffs direct me to RICO's legislative history and post-Carson caselaw. The legislative history they cite does not change my conclusion. Congress may have wanted to "provide for 'equitable relief' thereunder that was 'broad enough to do all that is necessary' to effectuate its statutory purpose." (Pls. Mem. 4 (quoting S. Rep. No. 617, 91st Cong., at 79 (1st Sess. 1969).) But the "prevent and restrain" language of § 1964(a) makes clear that the statutory purpose in question is prospective. And given that my conclusion hinges on RICO's statutory language, the post-Carson cases the Remaining Plaintiffs cite are inapposite because they interpret other statutes. In Liu, the Supreme Court held that disgorgement was permissible under the Securities Exchange Act, but that statute authorized federal courts to grant "any equitable relief that may be appropriate or necessary for the benefit of investors." 591 U.S. at 75 (quoting 15 U.S.C. § 78u(d)(5)). The same goes for SEC v. Govil. 86 F.4th 89 (2d Cir. 2023) (discussing disgorgement under 15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)). In Porter, the Court held that a district court had broad equitable powers under the Emergency Price Control Act (EPCA), but that statute allowed district courts to grant a "permanent or temporary injunction, restraining order, or other order." 328 U.S. at 397 (quoting 50 U.S.C.App. § 925(a)). In Mitchell, the Court held that a district court could order reimbursement for lost wages under the Fair Labor Standards Act

[2] The Fifth Circuit has adopted Carson's test. Richard v. Hoechst Celanese Chem. Grp., Inc., 355 F.3d 345, 355 (5th Cir. 2003). And the D.C. Circuit has taken an even more restrictive view as to the viability of a civil RICO disgorgement claim, holding that it could "find no justification for considering any order of disgorgement to be forward-looking as required by § 1964(a)." Philip Morris USA, 396 F.3d at 1201.

(FLSA), but that statute provided for broad jurisdiction "for cause shown, to restrain violations." 361 U.S. at 289 (citing 29 U.S.C. § 217). The Supreme Court has cautioned that Porter and Mitchell did not "purport to set forth a universal rule of interpretation." AMG, 593 U.S. at 79. Contrary to Remaining Plaintiffs' argument (Pls. Mem. of Law 15), EPCA and FLSA are not "substantively identical" to the RICO civil cause of action; each contains a broader jurisdictional grant than RICO does.

§ 1964(a) only allows for the imposition of those remedies which are calculated to prevent future harm.

## II. Disgorgement Would Not Constitute a Forward-Looking Remedy in This Case

The issue then becomes whether ordering disgorgement from defendants would qualify as forward-looking if the allegations of the Amended Complaint were true. Plaintiffs claim that disgorgement of ill-gotten gains is a "crucial tool to ensure future compliance with the law" and "serves the dual purpose of restoring the status quo and deterring future conduct." (Pls. Mem. 10-11.) But taking those claims to be axiomatic would contradict this Circuit's caselaw. This Circuit has held that "[c]ategorical disgorgement of all ill-gotten gains may not be justified simply on the ground that whatever hurts a civil RICO violator necessarily serves to 'prevent and restrain' future RICO violations." Carson, 52 F.3d at 1182. Instead, Carson instructs district courts to consider the particular circumstances that a plaintiff alleges, keeping in mind that "[o]rdinarily, the disgorgement of gains ill-gotten long in the past will not serve the goal of 'prevent[ing] or restrain[ing]' future violations unless there is a finding that the gains are being used to fund or promote the illegal conduct, or constitute capital available for that purpose."[3] Id. Remaining

[3] Remaining Plaintiffs would have me disregard this language from Carson as "non-binding dicta" because, they say, Carson contradicts Porter and Mitchell. (Pls. Mem. of Law 15.) But as I observed supra p. 7, the Supreme Court emphasized in AMG that Porter and Mitchell are simply interpretations of EPCA and FLSA, neither of which contains the "prevent and restrain" language of the RICO statute.

Plaintiffs respond by citing United States v. Turkette, 452 U.S. 576, 585 (1981), which describes the aim of RICO as "divest[ing] the association of the fruits of its ill-gotten gains." (Pls. Mem. of Law 11.) But they omit context. First, Turkette did not analyze the availability of disgorgement; it simply held that RICO applied to wholly illegitimate enterprises as well as partially legitimate ones. 452 U.S. at 587. And second, Turkette discusses disgorgement of ill-gotten gains in the context of "eradicating organized crime from the social fabric." Id. at 585. That is, Turkette endorses disgorgement in those limited circumstances wherein disgorgement would prevent and restrain future crime. I consider whether this case represents those circumstances.

Remaining Plaintiffs seek the disgorgement of ill-gotten gains allegedly obtained by Remaining Defendants between 2004 and 2014. (Amended Compl. ¶ 155.) They claim that Remaining Defendants are "still fully operational and continue to manage every aspect of medallion sales and transactions," such that disgorgement would inhibit their "opportunity to commit the same fraudulent acts that underlie the instant RICO lawsuit." (Pls. Memo 12-13). But per the Amended Complaint, the TLC, which administered the auctions, has experienced significant staff turnover since then. Matthew Daus, the onetime commissioner of the TLC, stepped down in 2010. (Amended Compl. ¶ 152.) David Yassky, who succeeded Daus, left the TLC shortly "after the last TLC auction was held in March 2014." (Id. ¶ 188.) Meera Joshi, who succeeded Yassky, left her position in 2019. (Id. ¶ 616.) And Michael Bloomberg's tenure as mayor ended in 2013. (Id. ¶ 581.) Even if Bloomberg and Daus were in fact "the chief architects" of Remaining Defendants' "fraudulent scheme to artificially inflate medallion values," (id. ¶ 86), those architects left the employ of Remaining Defendants over a decade ago. Moreover, Remaining Plaintiffs do not allege that Remaining Defendants have attempted to auction taxi

medallions in the decade since 2014, let alone allege that there is an auction in the future that disgorgement might restrain.

Taking the facts of this case as Remaining Plaintiffs plead them, ordering disgorgement would contravene Carson. The allegedly ill-gotten gains from the medallion auctions were obtained over ten years ago, there are no similar auctions on the horizon to which these gains might be put to fraudulent use, and the alleged bad actors are no longer in positions of power. Contrast this case with United States v. Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 914 F. Supp. 895 (E.D.N.Y. 1996), which Remaining Plaintiffs cite. (Pls. Mem. of Law 12.) In Nassau/Suffolk, the district court ordered disgorgement where the defendants "continue[d] to be actively involved in the identical activities upon which [that] RICO suit [was] predicated." 914 F. Supp. at 901. There, unlike here, the harmful conduct that the plaintiffs sought to stop was ongoing, and disgorgement would starve the defendants of "capital . . . for the purpose of funding or promoting illegal conduct." Id. So there, unlike here, disgorgement was an appropriate forward-looking remedy under § 1964(a).

Considering the circumstances alleged by Remaining Plaintiffs, I find that I cannot order disgorgement of ill-gotten gains in this case.[4]

### III. This Issue Can Be Resolved on the Pleadings

Remaining Plaintiffs argue that "[a]t [m]inimum," I should allow their case for disgorgement to proceed to discovery, since "the issue of whether a particular disgorgement award is related to restraining future conduct is fact-laden and cannot be decided at the motion to dismiss

[4] Had I found that disgorgement would "prevent and restrain" future conduct, I would have next decided whether Remaining Defendants enjoyed municipal immunity against disgorgement, as they did with treble damages. (M&O 15-21 (citing, inter alia, Gingras v. Think Fin., Inc., 922 F.3d 112 (2d Cir. 2019)).) As my previous analysis of treble damages demonstrated, not every RICO remedy is available against municipal defendants. See id. 19. Since I have determined that the disgorgement Plaintiffs seek is not cognizable under RICO, I need not address the municipal immunity question.

stage." (Pls. Mem. of Law 17-18.) Although it is true that Carson requires me to consider the effects of disgorgement in the circumstances of this case, I can rest that decision on the facts as pled by Remaining Plaintiffs, accepting those allegations, "and all reasonable inferences that can be drawn from those allegations in [Remaining Plaintiffs'] favor, as true." Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007); see Richard, 355 F.3d at 354-55 (holding that where a RICO disgorgement claim "seems to do little more than compensate for the alleged loss," the plaintiff has "fail[ed] to state a proper remedy" and dismissal is appropriate). Taking Remaining Plaintiffs at their word, the money that they would have me disgorge was obtained over a decade ago, through an auction process that has not taken place in the last decade and shows no sign of resuming soon, and by a group of TLC and City officials who largely no longer work in the New York City government. Even resolving all inferences in Remaining Plaintiffs' favor, they have not alleged any factual basis upon which I could determine that disgorgement could "prevent and restrain" future conduct. Because Remaining Plaintiffs have failed to allege facts sufficient to maintain a "plausible" claim for disgorgement under § 1964(a), Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), I must dismiss their claim.

## CONCLUSION

For these reasons, I DISMISS Remaining Plaintiffs' claim for equitable relief, including disgorgement, against Remaining Defendants.

SO ORDERED.

Dated: November 12, 2024
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge