# 25-667

## United States Court of Appeals
## for the Second Circuit

ALEC SOYBEL, GALINA KAMINKER, STEVEN NEWMAN, ROB NEWMAN, GUY ROBERTS, BORIS SHAPIRO, and SAVAS TSITIRIDIS,

*Plaintiffs-Appellants*,

*against*

THE CITY OF NEW YORK, NEW YORK CITY TAXI AND LIMOUSINE COMMISSION , MATTHEW W. DAUS, DAVID YASSKY, MEERA JOSHI, ALLAN FROMBERG, CHARLES FRASER, MICHAEL BLOOMBERG, EVGENY FREIDMAN, VLADIMIR BASIN, and MAMED DZHANIYEV,

*Defendants-Appellees.*

On Appeal from the United States District Court for the Eastern District of New York

## BRIEF FOR CITY APPELLEES

MURIEL GOODE-TRUFANT
*Corporation Counsel*
*of the City of New York*
Attorney for Appellees
100 Church Street
New York, New York 10007
212-356-3551
jlerner@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
JENNIFER LERNER
*of Counsel*

October 14, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

ISSUES PRESENTED FOR REVIEW ........ 3

STATEMENT OF THE CASE ........ 3

A. Plaintiffs' sprawling class action complaint alleging a decades-long fraudulent scheme to increase taxi medallion values ........ 3

B. The City defendants' motion to dismiss, and the district court's initial dismissal of the complaint on statute of limitations grounds ........ 6

C. The district court's mistaken conclusion on reconsideration that *American Pipe* tolling rendered certain plaintiffs' RICO claims timely ........ 8

D. The district court's dismissal of the remaining plaintiffs' RICO claims ........ 11

E. The dismissal of this action and the scope of this appeal 13

STANDARD OF REVIEW AND SUMMARY OF ARGUMENT ........ 14

ARGUMENT ........ 17

POINT I ........ 17

THIS COURT CAN AFFIRM THE DISMISSAL OF PLAINTIFFS' RICO CLAIMS ON TWO SEPARATE GROUNDS ........ 17

A. RICO does not allow a plaintiff to obtain monetary relief from a municipality. ........ 17

## TABLE OF CONTENTS (cont'd)

**Page**


1. RICO treble damages claims are not cognizable against municipalities. .......... 17

    a. Plaintiffs cannot wave away this precedent by observing that treble damages are both punitive and remedial. .......... 20

    b. RICO does not expressly authorize damages against a municipality. .......... 24

    c. Sound public policy reasons support holding the line that municipalities are not subject to RICO damages claims. .......... 30

2. Plaintiffs cannot evade this limitation by seeking compensatory monetary relief in the form of disgorgement. .......... 32

B. In the alternative, plaintiffs' RICO claims are time-barred because plaintiffs are not entitled to the benefit of *American Pipe* tolling. .......... 38

POINT II .......... 46

THIS COURT CAN AFFIRM THE DISMISSAL OF PLAINTIFFS' UNJUST ENRICHMENT CLAIM ON THREE SEPARATE GROUNDS .......... 46

CONCLUSION .......... 49

CERTIFICATE OF COMPLIANCE .......... 50

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Pipe and Construction Co. v. Utah*,
414 U.S. 538 (1974) .......... 2, 7, 38, 40

*AMG Capital Mgmt., LLC v. FTC*,
593 U.S. 67 (2021) .......... 35

*In re Bear Stearns Cos., Secs., Derivative, & ERISA Litig.*,
995 F. Supp. 2d 291 (S.D.N.Y. 2014), *aff'd sub nom. on other grounds, SRM Global Master Fund L.P. v. Bear Stearns Cos.*, 829 F.3d 173 (2d Cir. 2016) .......... 41

*Behrens v. JPMorgan Chase Bank, N.A.*,
No. 21-2603 (L), 2024 U.S. App. LEXIS 5992 (2d Cir. Mar. 13, 2024) .......... 41

*Blue Shield of Virginia v. McCready*,
457 U.S. 465 (1982) .......... 37

*Casey v. Merck & Co.*,
653 F.3d 95 (2d Cir. 2011) .......... 14

*China Agritech, Inc. v. Resh*,
584 U.S. 732 (2018) .......... 10

*City of Lafayette v. Louisiana Power & Light Co.*,
435 U.S. 389 (1978) .......... 29

*City of Newport v. Fact Concerts, Inc.*,
453 U.S. 247 (1981) .......... 19, 28, 31

*Clark-Fitzpatrick, Inc. v. Long Is. R. Co.*,
70 N.Y.2d 382 (1987) .......... 48

*Cohen v. S.A.C. Trading Corp.*,
711 F.3d 353 (2d Cir. 2013) .......... 47

*Community Communications Co., Inc. v. City of Boulder*,
455 U.S. 40 (1982) .......... 29

*Cook County v. United States ex rel. Chandler*,
538 U.S. 119 (2003) .......... *passim*

*Cross v. New York City Transit Authority*,
417 F.3d 241 (2d Cir. 2005) .......... 26, 27

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983) .................................................. 40, 42

*Cruz v. FxDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013) .................................................. 44

*Cullen v. Margiotta*,
811 F.2d 698 (2d Cir. 1987) .................................. 9, 42, 43, 44

*DeFalco v. Bernas*,
244 F.3d 296 (2d Cir. 2001) .................................................. 26

*Ford Motor Co. v. United States*,
405 U.S. 562 (1972) .................................................. 37

*Gabelli v. SEC*,
568 U.S. 442 (2013) .................................................. 39

*Gatt Commc'ns, Inc. v. PMC Assocs.*,
LLC, 711 F.3d 68 (2d Cir. 2013) .................................. 14, 15, 39

*Genty v. Resolution Trust Corp.*,
937 F.2d 899 (3d Cir. 1991) .............................. 15, 19, 20, 29, 31

*Gil Ramirez Group, L.L.C. v. Houston Independent School District*,
786 F.3d 400 (5th Cir. 2015) .................................................. 20, 21

*Gingras v. Think Finance, Inc.*,
922 F.3d 112 (2d Cir. 2019) .................................. 12, 15, 18, 24

*Goldman v. Metro. Life Ins. Co.*,
5 N.Y.3d 561 (2005) .................................................. 48

*Greater N.Y. Taxi Assn. v. State of N.Y.*,
21 N.Y.3d 289 (2013) .................................................. 30

*Hirsch v. City of N.Y.*,
751 F. App'x 111 (2d Cir. 2018) .................................................. 18

*Holmes v. Sec. Inv. Protection Corp.*,
503 U.S. 258 (1992) .................................................. 28

*Johnson v. Ry. Express Agency, Inc.*,
421 U.S. 454 (1975) .................................................. 41

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*,
940 F.2d 397 (9th Cir. 1991) .................................................. 18, 19

*Liu v. SEC*,
591 U.S. 71 (2020) .................................................................. 38

*Mitchell v. Robert De Mario Jewelry, Inc.*,
361 U.S. 288 (1960) ................................................................ 35

*Montauk-Caribbean Airways, Inc. v. Hope*,
784 F.2d 91 (2d. Cir. 1986) ...................................................... 29

*PacifiCare Health Systems, Inc. v. Book*,
538 U.S. 401 (2003) ................................................................ 21

*Porter v. Warner Holding Co.*,
328 U.S. 395 (1946) ................................................................ 35

*Potence v. Hazleton Area School District*,
357 F.3d 366 (3d Cir. 2004) ...................................................... 27

*Richard v. Hoechst Celanese Chem. Group, Inc.*,
355 F.3d 345 (5th Cir. 2003) ..................................................... 36

*Rogers v. City of N.Y.*,
359 F. App'x 201 (2d Cir. 2009) ................................................ 18

*Rossbach v. Montefiore Med. Ctr.*,
81 F.4th 124 (2d Cir. 2023) ....................................................... 47

*Safe Sts. All. v. Alt. Holistic Healing, LLC*,
No. 1:15-cv-00349, 2016 U.S. Dist. LEXIS 5934 (D. Colo. Jan. 19, 2016) ........ 22

*Sandcrest Outpatient Servs., P.A. v. Cumberland County Hosp. Sys., Inc.*,
853 F.2d 1139 (4th Cir. 1988) .............................................. 28, 29

*Shak v. JPMorgan Chase & Co.*,
156 F. Supp. 3d 462 (S.D.N.Y. 2016) ........................................ 43

*Singh v. City of New York*,
189 A.D.3d 1697 (2d Dep't 2020) ................................................. 9

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Singh v. City of New York*,
40 N.Y.3d 138 (2023) .................................................. 30, 40, 42, 48

*Sonnick v. Budlong*,
No. 5:20-CV-0410, 2020 U.S. Dist. LEXIS 98080
(N.D.N.Y. June 4, 2020) .................................................. 18

*Tengood v. City of Philadelphia*,
529 F. App'x 204 (3d Cir. 2013) .................................................. 22

*United States v. Angelilli*,
660 F.2d 23 (2d Cir. 1981) .................................................. 26

*United States v. Carson*,
52 F.3d 1173 (2d Cir. 1995) ............................ 13, 16, 33, 34, 35, 36

*United States v. Crescent Amusement Co.*,
323 U.S. 173 (1944).................................................. 37

*United States v. Glaxo Group, Ltd.*,
410 U.S. 52 (1973).................................................. 37

*United States v. Keyspan Corp.*,
763 F. Supp. 2d 633 (S.D.N.Y. 2011) .................................................. 37

*United States v. Philip Morris USA, Inc.*,
396 F.3d 1190 (D.C. Cir. 2005) .................................................. 36

*United States v. Sasso*,
215 F.3d 283 (2d Cir. 2000) .................................................. 33

*United States v. Turkette*,
452 U.S. 576 (1981).................................................. 33

*Zarecor v. Morgan Keegan & Co.*,
801 F.3d 882 (8th Cir. 2015) .................................................. 41

**Statutes**

15 U.S.C. § 4 .................................................. 36, 37

15 U.S.C. § 15 .................................................. 37

15 U.S.C. §§ 34-36 .................................................. 28

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

15 U.S.C. § 78u(d) .......... 38

18 U.S.C. § 1961(3) .......... 24, 27

18 U.S.C. § 1962 .......... 24, 32

18 U.S.C. § 1964(a).......... *passim*

18 U.S.C. § 1964(c).......... 2, 15, 19, 24

29 U.S.C. §§ 216(b), 626(b).......... 26

2003 N.Y.S. Laws ch. 63, Part 1 .......... 30

2006 N.Y.S. ch. 535 .......... 30

2011 N.Y.S. Laws ch. 602, as amended by 2012 N.Y.S. Laws ch. 9 .......... 30

N.Y.C. Admin. Code § 11-1402.......... 5

N.Y.C. Admin. Code § 19-532.......... 30

N.Y.C. Admin. Code, title 11, ch. 14 .......... 30

N.Y.C. Charter, ch. 10, § 225 *et seq*. .......... 35

N.Y.C. Local Law No. 18 of 2006.......... 30

N.Y.C. Local Law No. 51 of 2003.......... 30

N.Y. Tax Law § 1201(j) .......... 30

Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922 (1970) .......... 25

## PRELIMINARY STATEMENT

Plaintiff taxi medallion owners filed this putative class action in 2021, seeking to hold the City of New York, its Taxi and Limousine Commission (TLC), numerous former public officials and employees, and three individual medallion owners liable for the decline in their medallion values. They asserted claims under RICO, antitrust, and New York law, claiming that for more than a decade beginning in 2003, the City conspired to inflate the prices of taxi medallions, including through misleading public statements, collusive bidding at the 2004 and 2006 TLC medallion auctions, concealing information in 2010, and publishing false price reports in 2013 and 2014, and that the City concealed a plan to allow companies like Uber into the market.

The U.S. District Court for the Eastern District of New York (Amon, J.) correctly dismissed all of plaintiffs' claims as untimely or, with respect to certain plaintiffs' RICO claims, impermissible under the statute. This Court should affirm the judgment dismissing the complaint in its entirety, although it may do so on the grounds relied on by the district court or also on a narrower and case-specific ground.

The district court correctly dismissed the RICO claims against the City. As every court to consider the issue has held, RICO does not authorize municipal liability for treble damages. Treble damages under

18 U.S.C. § 1964(c) are partly punitive, and Congress never indicated an intent to subject municipalities or taxpayers to such sanctions. Nor can plaintiffs avoid that bar by rebranding their request for damages as disgorgement. Section 1964(a) allows only forward-looking equitable orders "to prevent and restrain" ongoing violations, not backward-looking monetary awards for past conduct. The alleged misconduct here ended more than a decade ago, and no ongoing violation exists.

Plaintiffs' RICO claims are also untimely because tolling under *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974) does not apply. This narrow exception to the statute of limitations for absent class members does not extend to different claims with a different factual basis that involve additional time periods and different witnesses and evidence. Plaintiffs' RICO allegations span from 2003 to 2014, reaching back a decade before the class period in the putative class action they rely on, and depend on collusive-bidding allegations involving parties wholly absent from that putative class action. Plaintiffs' RICO claims fall outside *American Pipe*'s reach.

Finally, the district court correctly dismissed plaintiffs' unjust enrichment claim. Plaintiffs twice waived any argument that the claim was timely, and *American Pipe* tolling cannot save these claims either. In any event, under settled New York Law, plaintiffs' unjust enrichment

claim is barred by the existence of written contracts governing plaintiffs' medallion auction purchases.

## ISSUES PRESENTED FOR REVIEW

1. Did the district court properly dismiss plaintiffs' RICO claims, where (a) RICO damages claims are not cognizable against municipalities, and (b) in the alternative, the claim is time-barred because plaintiffs are not entitled to *American Pipe* tolling?

2. Did the district court properly dismiss plaintiffs' unjust enrichment claim, where (a) plaintiffs forfeited any argument that their claim was timely twice over, (b) the claim is in fact untimely because, here too, plaintiffs are not entitled to *American Pipe* tolling, and (c) the existence of relevant written contracts precludes plaintiffs from pursuing a claim sounding in quasi-contract?

## STATEMENT OF THE CASE

### A. Plaintiffs' sprawling class action complaint alleging a decades-long fraudulent scheme to increase taxi medallion values

This action was initially commenced in April 2021 by plaintiffs Alec Soybel and Galina Kaminker. The complaint was subsequently amended to add five additional plaintiffs: Boris Shapiro, Savas Tsitiridis, Guy Roberts, Steven Newman, and Rod Newman. All of the plaintiffs are shareholders or members of corporate entities that own

multiple New York City taxi medallions purchased over a span of decades—beginning in the 1970s and running through 2014 (Joint Appendix ("JA") JA85-120). Some purchases were made in private transactions on the secondary market, while others were made after bidding at TLC auctions (*see id.*). Plaintiffs sued on behalf of themselves and a putative class of all owners of New York City taxi medallions from 2004 to 2017 who "decided to buy, sell, hold or take out a loan against" their taxi medallions based on the allegedly "artificially inflated market value" for the medallions and who "suffered financial losses" (JA80).

Plaintiffs asserted civil RICO claims, an antitrust claim under Section 1 of the Sherman Act, and an unjust enrichment claim under New York law based on the decline in the value of their medallions (JA142-56). They named as defendants the City, TLC, and various former City and TLC officials and employees: former mayor Michael Bloomberg (allegedly responsible for challenged actions 2004-2014), former TLC Chair Matthew Daus (allegedly responsible from 2001-2010), former TLC Chair David Yassky (allegedly responsible from 2010-2014), former TLC Chair Meera Joshi (allegedly responsible from 2014-2019), former TLC Deputy Commissioner for Public Affairs Allan Fromberg, and former TLC Deputy Commissioner for Legal Affairs Charles Fraser (JA36-37). They also named as defendants three

individual taxi medallion owners and brokers: Evgeny Freidman, Vladmir Basin, and Mamed Dzhaniyev (the "Freidman Defendants") (JA37-38).

Plaintiffs alleged that from 2004-2014, the City and TLC intentionally overstated the value of taxi medallions and fraudulently concealed that values had begun to decline in or around 2010, and that the City collected a five percent transfer tax on taxi medallion sales on the secondary market through 2017 (JA23-24, 127-29).[1] They highlight five components to the City's alleged scheme: (1) artificially inflating the "upset price" or minimum bid at TLC medallion auctions beginning in 2004, (2) allowing collusive bidding at TLC medallion auctions in 2004 and 2006, (3) publishing false and misleading reports about the average monthly sales prices for medallions in 2013 and 2014, (4) concealing a 2010 internal TLC report that expressed concerns that medallion prices had "outstripped their values," and (5) launching a false and misleading advertising campaign around the medallion auctions (JA24-32). Plaintiffs further alleged that the City defendants fraudulently concealed a plan to allow Uber, Lyft, and other app-based for-hire

---

[1] Plaintiffs incorrectly state in their brief that the City collected a 5% transfer tax on medallion sales at TLC auctions (Brief for Appellants ("App. Br.") 4). However, a transfer tax is assessed only on sales on the secondary market, as plaintiffs alleged in their complaint (JA24, 44). *See* N.Y.C. Admin. Code § 11-1402.

vehicles ("FHVs") into the market without purchasing taxi medallions which destroyed the value of their medallions (JA53-60, 98).

In support of their RICO claims, plaintiffs asserted that there were two identical enterprises, the "TLC Enterprise" and the "City Enterprise," each made up all of the individual defendants—i.e., all defendants other than TLC and the City—and each committing the same alleged predicate acts and pattern of racketeering activity (JA120-30). Plaintiffs alleged predicate acts of mail fraud and wire fraud based on the transmission of materials regarding taxi medallion auctions, sales prices, and purchases (JA122-26).

### B. The City defendants' motion to dismiss, and the district court's initial dismissal of the complaint on statute of limitations grounds

The City defendants moved to dismiss the complaint on a number of grounds, including lack of standing, statute of limitations, municipal immunity, and failure to state a claim (Special Appendix ("SA") 2). Initially, the district court dismissed all claims against the City defendants, finding them time-barred under the applicable statutes of limitation (SA1-46). The court also determined that TLC was not a proper defendant, but otherwise found no need to address the City defendants' other arguments for dismissal (SA15 n.7).

The district court held that plaintiffs' RICO claims were time-barred because, by the end of 2015, they were on inquiry notice based on significant "storm warnings" through numerous lawsuits and well-publicized media reports that raised allegations relating to the decline in medallion values, the entry of FHVs into the market, and misconduct on behalf of the City and TLC (SA15-36). Yet plaintiffs did not commence this action until April 2021, well outside RICO's four-year statute of limitations. The court rejected plaintiffs' claim that the limitations period should be tolled under the doctrine of fraudulent concealment (SA36-39).

The district court also found that plaintiffs were not entitled to tolling of their RICO claims under *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 550-51 (1974) (SA39-42). Under *American Pipe*, the commencement of a class action suspends the applicable statute of limitations as to all members of the class until class certification is denied or the suit is dismissed (*see* SA39). Plaintiffs argued that the putative class action, *Singh v. City of New York,* Index No. 701402/2017 (Queens County), commenced in state court in January 2017 on behalf of purchasers of taxi medallions at TLC's 2013-2014 auctions, tolled the statute of limitations for their RICO claims (SA40; *see* JA423-49). The court found that *Singh* did not warrant tolling,

reasoning that all of the tort-based claims asserted in that case, including those based on allegations of fraud and misrepresentations, were dismissed in September 2017, leaving only contract-based claims (SA40-41). The court further concluded that even if tolling were allowed for the nine-month period from the commencement of the *Singh* action to the dismissal of fraud-based claims, plaintiffs' claims in this action would still be untimely (SA41).

The court likewise dismissed plaintiffs' antitrust claim and state-law unjust enrichment claim as time-barred (SA42-46). As to the unjust enrichment claim, which is generally subject to a six-year statute of limitations under New York law, the court first found that plaintiffs had waived any argument that the claim was timely by failing to respond to City defendants' motion to dismiss on that issue (SA45). The court further found that the claims were untimely in any event because the latest date of accrual was April 2014, seven years prior to the commencement of the action (*id.*).

### C. The district court's mistaken conclusion on reconsideration that *American Pipe* tolling rendered certain plaintiffs' RICO claims timely

Plaintiffs moved for reconsideration of the district court's ruling denying *American Pipe* tolling for their RICO claims, and the district

court granted the motion, concluding that it had erroneously treated the date that the fraud-related claims were dismissed from the *Singh* action as the end-date for *American Pipe* tolling (SA52-58). The court found that the proper date such tolling would end was December 30, 2020, when the Appellate Division dismissed the action in its entirety (SA54). *See Singh v. City of New York*, 189 A.D.3d 1697 (2d Dep't 2020).

The district court observed that although the *Singh* plaintiffs did not appeal the dismissal of their fraud-related tort claims, they appealed the dismissal of their claim for deceptive business practices under New York General Business Law (GBL) § 349 (SA53). The court further noted that the trial court's denial of class certification in 2018 was without prejudice such that the question of class certification was unresolved at the time of the Appellate Division's dismissal (SA53-54).

The court reasoned that, under *Cullen v. Margiotta*, 811 F.2d 698, 720-21 (2d Cir. 1987), differences between the legal theories at issue in the class action and subsequent action do not matter so long as the challenged conduct is the same in both cases (SA54-55). The court did not discuss the timeframe or scope of conduct alleged in support of plaintiffs' RICO claims. It nonetheless concluded that, "[e]ven if the elements of a RICO cause of action differ from the elements of a deceptive business practices claim under GBL § 349, there is sufficient

overlap in the alleged wrongful acts to put the *Singh* defendants on notice to preserve evidence concerning their alleged artificial inflation of the price of medallions in advance of the 2013-2014 auctions" (SA55). On this basis, the court found that *American Pipe* tolling applied to those plaintiffs who were members of the putative *Singh* class and rendered their RICO claims timely (SA56).

But the district court nonetheless recognized that the two actions were significantly different in scope. The court thus cautioned that its application of *American Pipe* tolling was limited in three important respects. First, the only defendants in the *Singh* action were the City and TLC, so tolling did not apply with respect to the individual City defendants (SA57). Second, the allegations in *Singh* were limited to the 2013-2014 TLC auctions, so only those plaintiffs who purchased medallions at those auctions could benefit from tolling (*id.*).[2] Third, under *China Agritech, Inc. v. Resh*, 584 U.S. 732, 735-39 (2018), the present case could not be maintained as a class action because *American*

[2] The only plaintiffs who purchased medallions at the 2013-2014 auctions were Shapiro and Tsitiridis (*see* JA95, 100-01). Although the district court included Roberts as a "remaining plaintiff" based on a misstatement in plaintiffs' brief (*see* SA57 n.5), plaintiffs did not allege in their complaint that Roberts purchased medallions at the 2013-2014 auctions (*see* JA106-07), nor could they have.

*Pipe* tolling is limited to prior putative class members suing individually (SA57-58).

### D. The district court's dismissal of the remaining plaintiffs' RICO claims

As to the remaining plaintiffs whose RICO claims were not time-barred because they benefited from *American Pipe* tolling,[3] the district court next considered whether those claims were viable against the City.[4] Initially, the court held that the plaintiffs lacked standing because their alleged injuries were derivative of the corporate entities they control; it was the corporate entities, rather than plaintiffs themselves, that purchased medallions at the 2013-2014 auctions (SA58-61). The court determined that if the remaining individual plaintiffs could establish the viability of their claims, they would be permitted to amend their complaint to substitute the corporate entities as plaintiffs (SA61).

The district court next found that plaintiffs' RICO claims for treble damages could not be maintained against the City (SA61-67). Recognizing that federal courts have uniformly rejected municipal

---

[3] Consistent with the Brief for Appellants, we generally refer to "plaintiffs" in this brief, except where reference is made to "remaining plaintiffs" for clarity.

[4] Although the district court referred to claims against the City and TLC, the court's prior decision correctly concluded that TLC was not a suable entity, and thus not a proper defendant (*see* SA15 n.7). Accordingly, the City is the sole defendant here.

liability for such damages under RICO (SA64), the court highlighted this Court's decision in *Gingras v. Think Finance, Inc.*, 922 F.3d 112, 124-25 (2d Cir. 2019), which identified the two prevailing rationales for municipal immunity under RICO: (1) that government entities are incapable of forming the necessary *mens rea*, and (2) that taxpayers should not be saddled with the financial burden of punitive damages (SA61-62). In *Gingras*, this Court found the first rationale unpersuasive, and that the second rationale was not implicated because the claim at issue sought only prospective injunctive relief (SA62).

The district court found that dismissal was warranted under the second rationale, observing that, in *Gingras*, this Court "conceived of RICO treble damages as, at least in part, punitive and viewed the public policy rationale as persuasive, albeit inapplicable in that case" (SA64). The court rejected plaintiffs' argument that RICO's treble-damages provision was remedial rather than punitive, and that the financial burden on taxpayers therefore needn't be a concern (SA63). The court further found that the Supreme Court precedent relied upon by plaintiffs to argue that RICO treble damages were not punitive was distinguishable and not persuasive in the RICO context (SA65-66).

After subsequent briefing, the district court additionally found that plaintiffs could not maintain their claim for disgorgement under

RICO (SA71-80). The court first observed that 18 U.S.C. § 1964(a) authorizes district courts to "prevent and restrain" RICO violations (SA75). Relying on *United States v. Carson*, 52 F.3d 1173, 1182 (2d Cir. 1995), the court found that § 1964(a) allows only for the imposition of remedies calculated to prevent future harm (SA75-77). However, plaintiffs' requested relief—disgorgement of allegedly ill-gotten gains—was an entirely backward-looking remedy for past conduct (SA77-80). The court observed that the funds that plaintiffs sought to disgorge were obtained more than a decade ago through an auction process that had not taken place in the last decade and showed no sign of resuming, and that the officials accused of wrongdoing are no longer employed by the City (SA80). The court thus found that plaintiffs failed to allege any factual basis to support the conclusion that disgorgement could prevent and restrain future conduct (*id.*).

### E. The dismissal of this action and the scope of this appeal

After the district court dismissed all claims against the City defendants, two of the Freidman Defendants, Vladimir Basin and Mamed Dzhaniyev, moved for judgment on the pleadings on statute of limitations grounds (JA13). Plaintiffs agreed that, based on the court's prior rulings, their claims against the Freidman Defendants were time-

barred, and the district court dismissed the claims against Basin and Dzhaniyev (JA13-14). The third Freidman Defendant, Evgeny Freidman, passed away in 2021 (*see* SA6 n.3), and the court dismissed the claims against Freidman at plaintiffs' request (JA14).

This appeal is brought only on behalf of the plaintiffs who the district court found benefited from *American Pipe* tolling—Roberts, Shapiro, and Tsitiridis (*but see supra* n.2)—as the other plaintiffs do not challenge the dismissal of their claims as time-barred (App. Br. 11 n.3). The remaining plaintiffs do not challenge the determination that they may not assert their claims on behalf of a putative class (*id.* at 11 n.4), nor do they challenge the dismissal of their claims against the individual City defendants or the Freidman Defendants (*id.* at 3 n.2). They also do not appeal the dismissal of their antitrust claim. Accordingly, the claims at issue on this appeal are the remaining plaintiffs' RICO and unjust enrichment claims against the City.

## STANDARD OF REVIEW AND SUMMARY OF ARGUMENT

This Court reviews the grant of a motion to dismiss for failure to state a claim, including the district court's application and interpretation of a statute of limitations, *de novo*. *Gatt Commc'ns, Inc. v. PMC Assocs.*, LLC, 711 F.3d 68, 74 (2d Cir. 2013); *Casey v. Merck &*

*Co.*, 653 F.3d 95, 99 (2d Cir. 2011). For purposes of that review, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in plaintiffs' favor. *Gatt*, 711 F.3d at 74-75. This Court may affirm on any ground which finds support in the record, regardless of the ground upon which the trial court relied. *Id.* at 75.

Plaintiffs' claims here fail for multiple, independent reasons.

*First*, their RICO claims are barred as a matter of law because municipalities cannot be held liable for treble damages under RICO, and the disgorgement remedy they seek is likewise unavailable. Every federal court to address the question has held that a municipality cannot be liable for damages under RICO. The statute's treble-damages provision, 18 U.S.C. § 1964(c), is at least partly punitive, and Congress did not expressly authorize punitive recovery against municipalities. As this Court recognized in *Gingras v. Think Finance, Inc.*, 922 F.3d 112 (2d Cir. 2019), the rationale articulated in *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 910-14 (3d Cir. 1991)—that taxpayers should not bear punitive sanctions for official acts—applies squarely in this context.

Nor can plaintiffs avoid that result by recasting their claim for damages as one for disgorgement. Section 1964(a) authorizes only forward-looking relief to "prevent and restrain" ongoing violations; it does not permit retrospective monetary recovery for long-past conduct.

This Court's decision in *United States v. Carson*, 52 F.3d 1173 (2d Cir. 1995), forecloses the remedy plaintiffs seek. The alleged conduct here ended more than a decade ago, the officials involved have long since left public service, and no ongoing violation exists to be "prevented or restrained." Disgorgement of proceeds from medallion auctions held years earlier therefore falls outside § 1964(a)'s scope.

*Second*, plaintiffs' RICO claims are untimely, and cannot be saved by *American Pipe* tolling. The *Singh* putative class action, on which tolling is purportedly based, alleged different claims, and involved a much shorter time period with a much narrower factual basis. *American Pipe* established a circumscribed exception to statutes of limitations for absent class members who later file suits asserting the same cause of action after class certification is denied. It does not extend to new factual theories or time periods involving different witnesses and different evidence. That is what we have here.

Finally, the district court also correctly dismissed plaintiffs' unjust enrichment claim. Plaintiffs twice waived any argument that the claim was timely—first by failing to respond to the City's motion to dismiss and again on reconsideration. And their untimely claim cannot be salvaged by *American Pipe* tolling for the same reasons their RICO claims cannot be saved. In any event, the existence of written contracts

governing plaintiffs' medallion auction purchases bars their unjust enrichment claim under settled New York law.

# ARGUMENT

## POINT I

## THIS COURT CAN AFFIRM THE DISMISSAL OF PLAINTIFFS' RICO CLAIMS ON TWO SEPARATE GROUNDS

### A. RICO does not allow a plaintiff to obtain monetary relief from a municipality.

Through their RICO claims, plaintiffs seek only money damages, or the same thing in the guise of disgorgement. But neither form of relief is available here: on the one hand, RICO damages claims are not cognizable against municipalities; on the other hand, the provision that plaintiffs rely on in seeking disgorgement authorizes only forward-looking relief to prevent and restrain future RICO violations, not backward-looking compensatory monetary awards.

#### 1. RICO treble damages claims are not cognizable against municipalities.

As the district court recognized, every court that has considered the issue has concluded that a RICO claim for damages cannot be maintained against a municipality (SA61-67, 71-80). Courts have not always followed the same path in reaching that conclusion. Some courts

have found that municipalities cannot form the requisite *mens rea*. *See, e.g.*, *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991). This Court once endorsed that line of thinking. *See Hirsch v. City of N.Y.*, 751 F. App'x 111, 115 (2d Cir. 2018); *Rogers v. City of N.Y.*, 359 F. App'x 201, 204 (2d Cir. 2009).

But in *Gingras v. Think Finance, Inc.*, which involved a RICO claim against tribal defendants, this Court found that particular rationale unpersuasive, and pointed to another one undergirding a second line of authority: "concern over the appropriateness of imposing the burden of punitive damages on taxpayers based on misconduct of a public official." 922 F.3d 112, 125 (2d Cir. 2019). In *Gringas*, the Court allowed the RICO claim to proceed against the tribal defendants only because the plaintiffs sought exclusively injunctive relief, and so the concern about making members of the public bear the cost of punitive damages was not present in that case. *See Sonnick v. Budlong*, No. 5:20-CV-0410, 2020 U.S. Dist. LEXIS 98080, at *17-18 (N.D.N.Y. June 4, 2020) (citing *Gingras* and finding that RICO claim seeking "solely monetary damages" against municipality "offends public policy").

The idea that a party cannot pursue a RICO damages claim against a municipal (or tribal) entity has a strong pedigree; it has been adopted by the Third and Fifth Circuits, and it has roots in Supreme Court

precedent. In *Genty v. Resolution Trust Corp.*, the Third Circuit relied on *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) for the well-established principle that municipalities "are exempt from punitive damages, unless a statute expressly provides such damage awards against municipalities." *Genty*, 937 F.2d 899, 910 (3d Cir. 1991). That principle is implicated by RICO because its general remedies provision *requires* damages to be trebled, 18 U.S.C. § 1964(c); so if damages were to be awarded against a municipality, the only option would be to impose treble damages, as courts have no discretion to award less.

As the Third Circuit observed in *Genty*, "assessing treble damages against the municipality ... would impose punitive damages upon the innocent taxpayers in favor of the plaintiffs who already may have recourse for their full compensation in a non-RICO cause of action against the municipality." 937 F.2d at 913; *see also Lancaster Community Hosp.*, 940 F.3d at 404-05 ("Since civil RICO damages are not merely compensatory, but are trebled, *Newport* is compelling") (cleaned up). After reviewing the legislative history and purpose of RICO's civil enforcement provisions, the Third Circuit also concluded that "there is convincing authority that Congress authorized civil RICO's powerful treble damages provision to serve a punitive purpose." *Genty*, 937 F.2d at 910. Thus, while recognizing that Congress certainly

"intended section 1964(c) in part to compensate innocent victims," the court held that "the prevailing punitive nature of section 1964(c)'s compulsory award of treble damages convinces us that Congress, in keeping with the common law, did not intend to subject municipal corporations to RICO liability." *Id.* at 913-14.

The Fifth Circuit agreed in *Gil Ramirez Group, L.L.C. v. Houston Independent School District*, 786 F.3d 400 (5th Cir. 2015). Observing that RICO's treble damages are at least partially punitive, and that *Newport* requires Congress to clearly express its intent to expose municipalities to punitive damages, the Fifth Circuit found that "[n]o such clear intent to overcome governmental immunity appears in the RICO provision for treble damages." *Id.* at 412.

**a. Plaintiffs cannot wave away this precedent by observing that treble damages are both punitive and remedial.**

The Fifth Circuit also rejected the argument that plaintiffs press here—that because treble damages can serve both punitive and remedial purposes, *Newport*'s requirement that Congress must clearly express an intent to expose municipalities to punitive damages should not apply to RICO (*see* App. Br. 28-34). *Gil Ramirez*, 786 F.3d at 412-13. Plaintiffs' argument rests in part on *Cook County v. United States ex rel. Chandler*,

538 U.S. 119 (2003), which addressed claims against a municipality under the False Claims Act (FCA) and where the Supreme Court observed that "treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives." *Id.* at 130. Plaintiffs also point to *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401 (2003), but that case was about the interpretation of an arbitration agreement, and in particular "the uncertainty surrounding the parties' intent with respective to the contractual term 'punitive.'" *Id.* at 406. The Court simply held that its prior characterization of RICO's treble damages as "remedial" was not dispositive. *Id.* at 406-07. In any case, *PacifiCare* reaffirmed that its "cases have placed different statutory treble-damages provisions on different points along the spectrum between purely compensatory and strictly punitive awards." *Id.* at 406.

The Fifth Circuit grappled with this "ambivalen[t]" precedent in *Gil Ramirez*, concluding that "the Supreme Court's characterization of RICO treble damages as 'remedial' in *PacifiCare* cannot substitute for an express Congressional abrogation of municipal immunity from treble damages, which, whatever the characterization, exceed actual provable damages." 786 F.3d at 413. The court observed that "nothing in *PacifiCare* contravenes the Court's earlier holdings that treble-damages provisions serve both compensatory and punitive functions." *Id.*

Similarly, the Third Circuit has rejected the argument that *PacifiCare* abrogates its holding in *Genty*, explaining that, although "language in *PacifiCare* explains that RICO's mandatory treble damages award is both compensatory and punitive in nature, this fact was recognized in *Genty*, and did not affect our holding in that case." *Tengood v. City of Philadelphia*, 529 F. App'x 204, 209 n.4 (3d Cir. 2013) (citation omitted); *see also Safe Sts. All. v. Alt. Holistic Healing, LLC*, No. 1:15-cv-00349, 2016 U.S. Dist. LEXIS 5934, at *17 (D. Colo. Jan. 19, 2016) (rejecting suggestion that *PacifiCare* "undermines the well-reasoned authority to the effect that government entities cannot be liable under RICO because they are immune from punitive damages.").

Nor does the Supreme Court's holding in *Cook County*—that municipalities could be subject to *qui tam* actions, and treble damages, under the FCA—change the analysis. *See* 538 U.S. at 129-34. Initially, *Cook County* reaffirmed the rule stated in *Newport* that no punitive damages against a municipality are allowed unless expressly authorized by statute. *Id.* at 129. The Court then rejected the county's argument that the 1986 amendments to the FCA, which raised the damages recoverable from double to treble, rendered the remedy essentially "punitive," and thereby implicitly eliminated municipal liability. *See id.* at 132-34.

The Court reasoned that if Congress had intended to repeal municipal liability, it could have done so explicitly. *Id.* at 133. And, having concluded that municipalities were not excluded from liability under the FCA when it was originally enacted in 1863, *id.* at 129, it was "simply not plausible that Congress intended to repeal municipal liability *sub silentio* by the very Act it passed to strengthen the Government's hand in fighting false claims." *Id.* at 133-34. Thus, *Cook County* addressed the distinctive circumstance where the Court found that municipalities were subject to FCA damages at a time where they were merely doubled, and where Congress thereafter increased the damages multiplier to treble damages without indicating in any way that it intended to repeal municipal liability. No similar sequence exists here.

Additionally, unlike with plaintiffs' RICO claims, the primary objective of the FCA is recovery to the federal government, and that distinction, too, was crucial to *Cook County*'s analysis. Thus, in *Cook County*, while recognizing that treble-damages provisions have both compensatory and punitive elements, *id.* at 130, the Court observed that "[i]n *qui tam* cases the rough difference between double and triple damages may well serve not to punish, but to quicken the self-interest of some private plaintiff who can spot violations and start litigating to compensate the Government, while benefiting himself as well." *Id.* at

131. Moreover, valid public policy concerns about saddling the local taxpayer with punitive treble damages based on the misconduct of public officials, *see Gingras*, 922 F.3d at 125, are less salient when damages are paid not to private plaintiffs, but to the federal government. In this scenario, the burden on the local taxpayer is mitigated by the benefit it receives as federal taxpayer. *See Cook County*, 538 U.S. at 132. The same is not true under RICO's private civil action.

#### b. RICO does not expressly authorize damages against a municipality.

Plaintiffs contend that the clear authorization necessary to subject a municipality to punitive damages can be found in RICO's prohibition against racketeering activity by any "person," 18 U.S.C. § 1962, and its authorization of a civil suit with mandatory treble damages, 18 U.S.C. § 1964(c) (*see* App. Br. 18-22). But they are incorrect that such clear authorization can derive simply from the fact that a municipality falls within the definition of a "person," 18 U.S.C. § 1961(3). That contention founders in the face of unanimous precedent rejecting such liability and the complete absence of any legislative intent to draw municipalities within the ambit of RICO's at-least-partially-punitive damages provision. Far from express authorization allowing such damages against a municipality, plaintiffs rely on the *implication* that because a

municipality is considered a "person" under the statute, it must be subject to punitive damages. They offer no sound reason to read this definitional term so broadly.

Plaintiffs essentially argue that because *Cook County* held that a municipality is a "person" subject to suit under the FCA, the same is true with respect to RICO's damages provision (*see* App. Br. 19). But the statutes have very different histories and serve very different purposes. In *Cook County*, the Supreme Court concluded that "neither history nor text points to the exclusion of municipalities from the class of 'persons' covered by the FCA in 1863." 538 U.S. at 129. In contrast, the express statement of findings and purpose in RICO's adoption demonstrate that the legislation was intended "to seek the eradication of organized crime" and its infiltration of legitimate businesses "by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922 (1970) (Statement of Findings and Purpose). The adoption of a civil treble damages remedy reflects an intent to deter and eradicate organized crime, not a clear authorization to subject municipalities to punitive liability.

Plaintiffs point to *United States v. Angelilli*, 660 F.2d 23 (2d Cir. 1981) (*see* App. Br. 22), where this Court found that "the purpose and history of the [Organized Crime Control Act of 1970] and the substance of RICO's provisions demonstrate a clear congressional intent that RICO be interpreted to apply to activities that corrupt public or governmental entities." *Id.* at 33. This interpretation was consistent with "Congress's concern about the infiltration of local governmental units." *Id.* at 32; *see also DeFalco v. Bernas*, 244 F.3d 296, 308 (2d Cir. 2001) (same). Thus, a governmental unit could be considered a RICO enterprise because it could be infiltrated by wrongful actors utilizing the government unit to conduct their own corrupt activities. *See DeFalco*, 244 F.3d at 308-09. But this scenario is plainly distinct from the situation here, where plaintiffs seek to impose punitive liability on the City for allegedly wrongful activities being conducted on its behalf. While a governmental unit may be a RICO enterprise, it simply does not follow that a governmental unit is subject to liability for treble damages.

*Cross v. New York City Transit Authority*, 417 F.3d 241 (2d Cir. 2005), is also of no help to plaintiffs here (*see* App. Br. 24). In *Cross*, this Court rejected the argument that the liquidated damages provision of the Age Discrimination in Employment Act (ADEA), which provides for double damages for willful violations, *see* 29 U.S.C. §§ 216(b),

626(b), was not available against a municipal defendant because of the punitive nature of such damages. *Cross*, 417 F.3d at 254-57. Accepting that such damages were indeed punitive, *see id.* at 255 (citing *Trans World Airlines v. Thurston*, 469 U.S. 111, 125 (1985)), the question of whether they were allowed in the ADEA context could be answered by reference to the statute itself. Adopting the analysis of the Third Circuit in *Potence v. Hazleton Area School District*, 357 F.3d 366 (3d Cir. 2004), this Court explained that ADEA's definition of an "employer" subject to liability under the statute expressly included state and municipal entities. *Cross*, 417 F.3d at 255 (citing 29 U.S.C. § 630(b)). RICO's definition of a covered "person," in contrast, refers generally to "any individual or entity capable of holding a legal or beneficial interest in property," 18 U.S.C. § 1961(3). Unlike the ADEA, neither this provision in RICO nor any other expressly speaks to the liability of municipal entities, much less says—through a simple combination of express terms—that municipal entities are subject to double or treble damages.

Additionally, the ADEA specifically incorporated the enforcement powers and remedies of the Fair Labor Standards Act (FLSA), which provided for a damages action against any employer, a term that expressly captured any public agency. *Cross*, 417 F.3d at 255-56 (citing

29 U.S.C. §§ 216(b), 626(b)). The "punitive" damages available against a municipality under the ADEA were thus expressly authorized by the statute, and therefore did not run afoul of the principle recognized in *Newport* that otherwise such damages are barred. *See Cook County*, 538 U.S. at 129; *Newport*, 453 U.S. at 260. Not so here.

Plaintiffs also wrongly suggest that municipal liability under RICO should be presumed because when Congress intends to exempt municipalities it does so explicitly (*see* App. Br. 20-21). Noting that Congress modeled RICO's civil enforcement provision on the analogous provision of the Clayton Act, *see Holmes v. Sec. Inv. Protection Corp.*, 503 U.S. 258, 267 (1992), plaintiffs argue that because the Clayton Act explicitly exempts municipal entities from its damages regime, 15 U.S.C. §§ 34-36, and RICO contains no such carveout, Congress must have intentionally omitted such exemption.

Plaintiffs overlook that no such explicit exemption existed in the Clayton Act when the RICO statute was adopted in 1970. Rather, these exemptions were part of the Local Government Antitrust Act of 1984, 15 U.S.C. §§ 34-36 ("LGAA"), enacted by Congress to broaden the antitrust immunity applicable to local governments to correct course after Supreme Court decisions had narrowed its scope under that specific statute. *See Sandcrest Outpatient Servs., P.A. v. Cumberland*

*County Hosp. Sys., Inc.*, 853 F.2d 1139, 1142 (4th Cir. 1988) (Powell, J.); *Montauk-Caribbean Airways, Inc. v. Hope*, 784 F.2d 91, 94 (2d. Cir. 1986); *Genty*, 937 F.2d at 914 n.8.[5] There is thus no basis to conclude that the absence of an explicit municipal exemption from RICO's civil enforcement provisions reflects a Congressional determination to reject municipal immunity. But on a more fundamental level, plaintiffs' suggestion of a presumption in *favor* of municipal liability for punitive damages flips *Newport* on its head. *Newport* requires clear statutory authorization before municipalities will be subject to punitive damages, and RICO does not fit the bill.

Moreover, because the RICO statute was adopted prior to the time that the Clayton Act's treble damages provision was applied to municipalities, there is no reason to think that Congress believed that RICO's treble damages provision would—or that it intended it to do so. It is far more likely, given the statute's explicit purpose to eradicate organized crime, that municipal liability was not contemplated at all.

---

[5] Neither of the Supreme Court's decisions specifically addressed municipal liability for treble damages under the statute. *See Community Communications Co., Inc. v. City of Boulder*, 455 U.S. 40, 65 (1982) (Rehnquist, J., dissenting) ("The Court understandably leaves open the question whether municipalities may be liable for treble damages"); *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 402 n.22 (1978). However, after those decisions, there was a flood of suits against local government entities seeking treble damages, and the LGAA was enacted in response. *See Sandcrest*, 853 F.2d at 1142, 1147.

#### c. Sound public policy reasons support holding the line that municipalities are not subject to RICO damages claims.

Plaintiffs' argument that treble damages are appropriate when a municipality ostensibly adopts a "policy" of racketeering activity (*see* App. Br. 34-37) in fact demonstrates why RICO's damages provision should not apply. Although RICO may certainly be utilized against wrongful actors who seek to use the government to conduct their own corrupt activities, the notion that a municipality may be subject to RICO liability based on an official policy of racketeering threatens to turn disagreements about policy choices and economic decisions into civil RICO suits. This is well-illustrated here, where plaintiffs' RICO claims are largely based on TLC's discretionary regulatory decisions, its responsibilities for holding medallion auctions authorized by state and local law, and the City's exercise of its taxing authority.[6]

Moreover, plaintiffs' argument that taxpayers need not be shielded from the consequences of the City's alleged racketeering because they supposedly reaped its rewards (*see* App. Br. 36) does not

---

[6] *See* 2011 N.Y.S. Laws ch. 602, as amended by 2012 N.Y.S. Laws ch. 9; 2006 N.Y.S. ch. 535; N.Y.C. Local Law No. 18 of 2006; 2003 N.Y.S. Laws ch. 63, Part 1; N.Y.C. Local Law No. 51 of 2003; N.Y.C. Admin. Code § 19-532; N.Y. Tax Law § 1201(j); N.Y.C. Admin. Code, title 11, ch. 14; *see also Singh v. City of New York*, 40 N.Y.3d 138, 141-43 (2023); *Greater N.Y. Taxi Assn. v. State of N.Y.*, 21 N.Y.3d 289, 296-300 (2013).

explain why taxpayers should be subjected to the burden of RICO's treble damages provision when those injured by the municipality's alleged wrongful acts may be fully compensated through traditional non-RICO causes of action. *See Genty*, 937 F.2d at 913. Nor can the imposition of such damages reasonably be viewed as serving a deterrent function. A municipality, of course, may act only through its agents and officials. But as the Supreme Court observed in *Newport*, officials are unlikely to be deterred by the prospect of large damages awards against the municipality. 453 U.S. at 268-69. The same is true in this scenario, where a municipal official carrying out a supposed "policy" of racketeering would hardly be concerned about the possibility that the municipality may later be subject to a treble damages award.

In short, concern for imposing the punitive burden of treble damages on taxpayers based on the misconduct of public officials amply supports the rejection of municipal liability for RICO damages. Plaintiffs fail to provide any basis to overturn the well-established rule shielding municipalities from such liability.

#### 2. Plaintiffs cannot evade this limitation by seeking compensatory monetary relief in the form of disgorgement.

Plaintiffs next argue that, if damages are unavailable against municipalities under RICO, they can still obtain monetary relief in the form of disgorgement (App. Br. 38-61). In support, plaintiffs point to § 1964(a), which gives district courts "jurisdiction to prevent and restrain violations of section 1962," and gives examples of orders the court may issue. 18 U.S.C. § 1964(a). According to plaintiffs, § 1964(a) authorizes broad equitable relief, and because disgorgement is an equitable remedy, it must authorize that too (*see* App. Br. 38-39).

The district court correctly rejected this argument in light of the plain statutory text and binding precedent (SA71-80). Start with the text. Section 1964(a) gives courts the power "to prevent and restrain" prohibited activities. 18 U.S.C. § 1964(a). This provision does not authorize all forms of equitable relief, as plaintiffs seem to belief. On its face, § 1964(a) is about forward-looking relief designed to prevent or restrain prohibited activities in the future. That is confirmed by the illustrative list of "appropriate orders," all of which are calculated to prevent or restrain future violations: divestiture from the enterprise engaging in prohibited activities; restrictions on future activities or investments; or dissolving or reorganizing the enterprise. *Id.* But what

plaintiffs seek here—"disgorgement of profits and actual damages"—is inherently backward-looking and beyond what § 1964(a) allows (JA156-57).

Plaintiffs' argument is also foreclosed by *United States v. Carson*, 52 F.3d 1173 (2d Cir. 1995), where this Court held that disgorgement of a union official's ill-gotten gains was not an available remedy under RICO, pointing to the plain language of § 1964(a). *Carson*, 52 F.3d at 1181. The Court highlighted the phrase "to prevent and restrain," and underscored that the three examples contained in the text are "forward looking, and calculated to prevent RICO violations in the future." *Id.* The "disgorgement of gains ill-gotten long ago" seeks to punish past conduct, not to "prevent and restrain" future conduct. *Id.* at 1181-82.[7]

Plaintiffs posit that disgorgement could deter theoretical future violations of RICO. But they have not plausibly alleged that there is a real risk of future violations here. Far from it: the alleged conduct is between one and two decades in the past—spanning roughly from 2003 to 2014. *Compare United States v. Sasso*, 215 F.3d 283, 291 (2d Cir.

---

[7] Plaintiffs' reliance on *United States v. Turkette*, 452 U.S. 576 (1981) is misplaced (*see* App. Br. 38). *Turkette* discussed the aim of RICO's civil remedies provision generally, including its authorization of treble damages. 452 U.S. at 585. The decision did not purport to describe the purpose of the equitable relief authorized under § 1964(a).

2000) (holding that disgorgement may be available where the ill-gotten gains would help rid a still-affected enterprise of the vestiges of racketeering). More to the point, *Carson* forecloses plaintiffs' gambit, holding that "[c]ategorical disgorgement of all ill-gotten gains may not be justified simply on the ground that whatever hurts a civil RICO violator necessarily serves to 'prevent and restrain' future RICO violations." *Carson*, 52 F.3d at 1182.

To be sure, there may be situations where ill-gotten gains are being used to "fund or promote the illegal conduct, or constitute capital available for that purpose." *Id.* But plaintiffs have not marshalled any such allegations here. As in *Carson*, the money obtained by the City from selling taxi medallions at the 2013-2014 auctions was acquired years before this civil lawsuit was filed and is too far in the past "for its disgorgement to be part of an effort to 'prevent and restrain' *future* conduct." *Id.* at 1182. The City actors who plaintiffs claim engaged in wrongdoing have long since left their roles with the City; the main private actor with whom the City actors allegedly colluded, Evgeny Freidman, has died; and no future medallion auctions are planned.

In claiming that the profits from the auctions "constitute capital available" to the City to commit future RICO violations, *Carson*, 52 F.3d at 1182 (App. Br. 59), plaintiffs overlook that proceeds are used to fund

City operations and services through a budget process with significant legislative oversight. *See* N.Y.C. Charter, ch. 10, § 225 *et seq*. And though plaintiffs allege that the City improperly obtained funds, there is no allegation that the City misused funds to promote illegal conduct.[8]

No doubt aware that *Carson* forecloses disgorgement here, plaintiffs cast shade on the Court's decision. They begin by citing *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) and *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288 (1960). But both of those cases predate *Carson*. In any case, the statutes at issue in those cases are not "materially indistinguishable" from § 1964(a) (App. Br. 40, 42). Neither § 205 of the Emergency Price Control Act, addressed in *Porter*, nor § 17 of the Federal Labor Standards Act, addressed in *Mitchell*, contain the key "prevent and restrain" terminology in § 1964(a). Nor do either of those statutes explicitly list examples of orders that are "forward looking, and calculated to prevent [] violations in the future." *Carson*, 52 F.3d at 1181; *see Porter*, 328 U.S. at 397; *Mitchell*, 361 U.S. at 289.

Moreover, the Supreme Court has cautioned against reading *Porter* and *Mitchell* as authorizing equitable monetary relief in other statutory contexts. *AMG Capital Mgmt., LLC v. FTC*, 593 U.S. 67, 79

---

[8] The claim that the fact that the City and TLC remain "fully operational" means they will "implement similar" schemes warrants no response (App. Br. 58-59).

(2021). The D.C. Circuit recognized this, agreeing with this Court that "the language of § 1964(a) and the comprehensive remedial scheme of RICO preclude disgorgement as a possible remedy." *United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1197 (D.C. Cir. 2005).[9] Addressing *Porter* and *Mitchell*, the D.C. Circuit concluded that RICO imposes "limitations not present in the FLSA or the EPCA." *Id.* at 1199; *see also Richard v. Hoechst Celanese Chem. Group, Inc.*, 355 F.3d 345, 354-55 (5th Cir. 2003) (following *Carson* and holding that when disgorgement is sought for the purpose of compensating a party for past injuries, the plain language of § 1964(a) bars relief).

Nor are plaintiffs helped by their attempt at analogy to § 4 of the Sherman Act (*see* App. Br. 48-50). Although the introductory clause of § 4 is similar to § 1964(a) in that it vests the district courts with jurisdiction to "prevent and restrain" violations, 15 U.S.C. § 4, the statutes diverge significantly after that. Section 4 does not list examples of orders that are forward-looking and calculated to prevent future violations. *See id.* And, unlike § 1964(a), § 4 is explicit that the ability "to institute proceedings in equity to prevent and restrain violations" is

[9] While *Carson* allowed for the possibility of disgorgement where there is a finding that the gains are being used to fund or promote illegal conduct, *Carson*, 52 F.3d at 1182, the D.C. Circuit found "no justification for considering any order of disgorgement to be forward-looking." *Philip Morris*, 396 F.3d at 1201.

limited to the United States. 15 U.S.C. § 4. Even if disgorgement were generally allowed under § 4, it is an inherently different situation when such relief is sought not on behalf of the government, but as a compensatory remedy by private plaintiffs.

Even more critically, plaintiffs are flatly wrong that § 4 of the Sherman Act is "universally understood" to authorize disgorgement for antitrust violations (App. Br. 48-49). First, *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982), did not address § 4 of the Sherman Act, but rather the treble damages provision of § 4 of the Clayton Act, 15 U.S.C. § 15. *Blue Shield*, 475 U.S. at 472-73. The other Supreme Court cases plaintiffs cite do not address disgorgement at all. *See United States v. Crescent Amusement Co.*, 323 U.S. 173, 188-89 (1944) (divesture of interests in corporations); *United States v. Glaxo Group, Ltd.,* 410 U.S. 52, 64 (1973) (mandatory selling on specified terms and compulsory patent licensing at reasonable charges); *Ford Motor Co. v. United States*, 405 U.S. 562, 572 (1972) (divestiture sale). And the one case plaintiffs cite that does involve disgorgement, *United States v. Keyspan Corp.*, 763 F. Supp. 2d 633 (S.D.N.Y. 2011), explicitly acknowledged the differences between the RICO and antitrust statutes in finding disgorgement appropriate under the unique circumstances of that case. *See id.* at 640-41.

Next, plaintiffs point to *Liu v. SEC*, 591 U.S. 71 (2020), in which the Supreme Court held that disgorgement was an equitable remedy allowed under a provision of the Securities Exchange Act (*see* App. Br. 29, 51). But that case involved a statute that broadly authorizes "any equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5). If anything, the statute offers a helpful contrast to § 1964(a), in which Congress elected not to adopt a broad authorization of equitable relief in favor of far more limited language granting courts the power to "to prevent and restrain" RICO violations.

Section 1964(a) is laser-focused on relief that is calculated to prevent or restrain future RICO violations. It simply is not the broad authorization of equitable relief that plaintiffs claim it is.

### B. In the alternative, plaintiffs' RICO claims are time-barred because plaintiffs are not entitled to the benefit of *American Pipe* tolling.

While the district court correctly concluded that plaintiffs cannot pursue a damages or disgorgement claim against the City under RICO, the simpler and narrower ground for affirmance may be that their claims are time-barred because plaintiffs are not entitled to tolling under *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974). The Court can affirm the dismissal of plaintiffs' RICO claims on

this alternative case-specific ground. *See Gatt*, 711 F.3d at 75. And it makes sense to reach the question. After all, the district court has issued a definitive ruling on *American Pipe* tolling, getting it half-right by concluding (correctly) that plaintiffs could not use that doctrine to pursue aspects of their RICO claims but concluding (incorrectly) that some plaintiffs could pursue an unspecified version of the claims.

The starting point for any *American Pipe* analysis is to recognize that the doctrine is a narrow and pragmatic exception to statutes of limitations. So it should not be lost in the analysis that statutes of limitations are "vital to the welfare of society." *Gabelli v. SEC*, 568 U.S. 442, 449 (2013) (cleaned up). They advance important policies of "repose, elimination of stale claims, and certainty," and "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Id.* at 448-49 (cleaned up). While *American Pipe* promotes efficiency by preventing the proliferation of duplicative suits while a class certification motion is pending, it is not a mechanism for reviving stale claims nor is it a foothold for pursuing more expansive claims than those surfaced in the putative class action.

With that background, the *American Pipe* rule is this: "the commencement of a class action suspends the applicable statute of

limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. So upon the occurrence of an event shutting the door to class certification—either the denial of class certification or the dismissal of the entire action without reaching class certification—members of the putative class who later elect to pursue their own individual lawsuits are entitled to *American Pipe* tolling. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350-51 (1983). The toll runs from the commencement of the putative class action to the denial of class certification or the dismissal of the action without reaching class certification. *See id.*

The mechanics do not really matter here. Plaintiffs concede that they need *American Pipe* tolling for their RICO claims to be timely, and for present purposes the City defendants do not dispute that if the doctrine applies, the tolling period would be long enough to render plaintiffs' RICO claims timely. The crux of the dispute is whether the RICO claims that plaintiffs want to pursue in this action bear the requisite relationship to the claims pursued in the putative state-court class action that is the foundation for plaintiffs' *American Pipe* theory: *Singh v. City of New York* (*see generally supra* at 7-10). *See Singh*, 40 N.Y.3d 138.

In recent years, this Court and others have gravitated toward a fairly stringent approach to assessing the requisite relationship. In *Behrens v. JPMorgan Chase Bank, N.A.*, this Court held that "*American Pipe* applies only to 'exactly the same cause of action' as asserted in the prior case." No. 21-2603 (L), 2024 U.S. App. LEXIS 5992, at *5 (2d Cir. Mar. 13, 2024) (summary order) (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 467 (1975)); *see also In re Bear Stearns Cos., Secs., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 303 (S.D.N.Y. 2014) (same), *aff'd sub nom. on other grounds*, *SRM Global Master Fund L.P. v. Bear Stearns Cos.*, 829 F.3d 173 (2d Cir. 2016); *Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 888 (8th Cir. 2015) (concluding that "*American Pipe* tolling should be limited to claims filed in a later action that are the same as those pleaded in the putative class action"). That approach has a solid foundation: in *Johnson v. Railway Express Agency Inc.*, the Supreme Court underscored that "the tolling effect given to the timely prior filings in *American Pipe* … depended heavily on the fact that those filings involved exactly the same cause of action subsequently asserted." 421 U.S. at 467. And if this approach is applied here, plaintiffs certainly lose. Plaintiffs cannot credibly maintain that their RICO claims are "exactly the same" as the state-law

claims for breach of contract, fraud, and deceptive business practices pursued in *Singh*.

That said, nearly four decades ago, this Court held in *Cullen v. Margiotta* that *American Pipe* tolling could extend to a later suit asserting a different legal theory. 811 F.2d 698, 720-21 (2d Cir. 1987). At first blush, that approach appears to be more flexible than the one employed in cases like *Behrens* and *Johnson*. But whatever play in the joints there may be in the inquiry, even *Cullen* made clear that the putative class action and the later suit must rest on the same "factual basis." *Id.* at 721. Stated differently, *American Pipe* does not apply when a plaintiff raises a new factual theory. The conduct captured by the two actions must overlap to such an extent that "the relevant evidence, memories, and witnesses … are the same for both actions." *Id.* at 720; *see also Crown, Cork & Seal*, 462 U.S. at 354-55 (Powell, J., concurring) (instructing courts to "ensure that the suit raises claims that concern the same evidence, memories, and witnesses").

Plaintiffs fail this test too. The *Singh* litigation was confined to the 2013-2014 TLC auctions, and addressed conduct occurring no earlier than 2011. *See Singh*, 40 N.Y.3d at 143. Plaintiffs' RICO claims, in contrast, hinge on conduct that occurred in 2004-2006, and the claim's dramatically broader scope necessarily entails different "evidence,

memories, and witnesses." *Cullen*, 811 F.2d at 720; *see, e.g.*, *Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 475-77 (S.D.N.Y. 2016) (tolling not warranted, despite some similarities in the wrongful price manipulation alleged, where there was significant non-overlapping conduct that took place at different times).

The district court understood that the two actions were materially different. That is why the court found that plaintiffs' RICO claim had to be sharply limited on multiple fronts. Among other things, the court recognized that the allegations in *Singh* were limited to conduct concerning the 2013-2014 TLC auctions, and so only the plaintiffs in this action who purchased medallions at those auctions could benefit from tolling (SA57).

If the district court thought this solved the problem arising from the differences between the two actions, it was mistaken. In this regard, the court spoke in terms of the plaintiffs who could pursue a RICO claim; it did not specify whether the allegations that those plaintiffs could pursue would also be limited to the 2013-2014 timeframe or thereabouts. But either way, *American Pipe* cannot save plaintiffs' RICO claims.

On the one hand, the district court may have believed that the remaining plaintiffs could only press allegations that matched those

presented in *Singh* and fall in the 2013-2014 range. But that only creates another problem. After all, we are talking about RICO claims here, and the linchpin of plaintiffs' allegations about the existence of a RICO enterprise involved conduct reaching back to the 2004 to 2006 period. It is during that period that plaintiffs allege that the City turned a blind eye and facilitated the Friedman Defendants' collusion to inflate upset prices through coordinated bidding (JA42-50). The allegations about these non-City defendants have always been at the heart of plaintiffs' RICO claims, perhaps because plaintiffs know that a RICO enterprise cannot "consist merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." *Cruz v. FxDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) (cleaned up).

On the other hand, the district court may have believed that the plaintiffs, though limited to those who purchased medallions at the 2013 and 2014 auctions, could nonetheless continue to rely on allegations reaching all the way back to the period from 2004 to 2006. But if that is the case, then the differences between this action and *Singh* would still be so wide that the two actions would require resort to different "evidence, memories, and witnesses." *Cullen*, 811 F.2d at 720. The 2004 to 2006 allegations have no foundation in *Singh*, which did

not make allegations about collusive bidding practices, allege misconduct by the Friedman Defendants, or, for that matter, allege any wrongdoing in the 2004 to 2006 period.[10]

Whichever path is taken, plaintiffs cannot use *American Pipe* tolling to save their RICO claims. Either plaintiffs can continue to press allegations reaching back to 2004 through 2006, in which case the differences between this action and *Singh* will be so stark that plaintiffs cannot invoke *American Pipe* tolling. Or plaintiffs are now limited to the same constellation of allegations raised in *Singh*, in which case plaintiffs are left without viable RICO claims. The district court had the right instinct when it recognized that plaintiffs' RICO claims were too sweeping for *American Pipe* tolling, but it failed to follow that insight to the logical conclusion: *American Pipe* gets plaintiffs nowhere. This Court can therefore affirm on the basis that plaintiffs' RICO claims are untimely.

---

[10] Nor would this be the only gap between the two actions. As another example, nothing in the *Singh* litigation would have alerted the City to the conduct that plaintiffs allege occurred in 2003 to 2004, when former Mayor Bloomberg and former TLC Chair Daus supposedly devised a scheme to sell taxi medallions at artificially inflated upset prices to plug a hole in the budget (*see* JA39-40).

## POINT II

### THIS COURT CAN AFFIRM THE DISMISSAL OF PLAINTIFFS' UNJUST ENRICHMENT CLAIM ON THREE SEPARATE GROUNDS

Plaintiffs also try to resurrect a state-law unjust enrichment claim, arguing that with *American Pipe* tolling, this claim would be timely too (App. Br. 61-65). But the claim fails on three different levels: (1) plaintiffs have forfeited this argument; (2) plaintiffs would not be entitled to *American Pipe* tolling in any event; and (3) the existence of written contracts bars plaintiffs from pursuing a claim in quasi-contract.

*First*, plaintiffs twice forfeited any argument that their unjust enrichment claim would be timely with *American Pipe* tolling. In their opposition to the motion to dismiss, plaintiffs failed to offer *any* response to City defendants' arguments that their unjust enrichment claim was untimely, much less argue that *American Pipe* tolling should be applied (EDNY ECF No. 56). The district court was right to find that plaintiffs forfeited any argument that their claim was timely (SA45). Plaintiffs' observation that they broadly argued that "inquiry notice" was absent is a non sequitur (*see* App. Br. 62 n.20). As the City defendants explained in their motion to dismiss (EDNY ECF No. 55 at 29), inquiry notice is irrelevant to an unjust enrichment claim, which accrues "upon

the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud [were] discovered." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 364 (2d Cir. 2013) (cleaned up). Nor do plaintiffs explain how making an argument about inquiry notice would preserve a distinct argument about *American Pipe* tolling in any event.

Plaintiffs again forfeited their argument that their unjust enrichment claim would be timely with *American Pipe* tolling when they failed to raise any such argument in their motion for reconsideration (EDNY ECF No. 72-1). Under these circumstances, where nothing prevented the plaintiffs from raising the argument below, and they offer no reason for their failure to raise it, there is no reason this Court should exercise its discretion to consider it for the first time on appeal. *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 140 (2d Cir. 2023).

*Second*, plaintiffs based their unjust enrichment claim on the same alleged decade-long "fraudulent scheme" underlying their RICO claims (JA155). *American Pipe* tolling cannot save this claim for the reasons explained above (*see* Point I(B), *supra*).

*Third*, to the extent plaintiffs propose—for the first time on appeal—to narrow their unjust enrichment claim so that it "rests on identical conduct alleged in *Singh* and effectively mirrors the *Singh*

plaintiffs' rescission claim" (App. Br. 63), it fails in any event. Under New York law, the existence of a written contract governing a particular subject matter "precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Is. R. Co.*, 70 N.Y.2d 382, 388 (1987); *see also Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005) (finding "there was no unjust enrichment because the matter is controlled by contract"). And plaintiffs' newly reformulated unjust enrichment claim would be barred by the existence of contracts governing the auction purchases at issue. Indeed, the *Singh* action primarily addressed claims regarding these contracts (*see* JA445, 447-48). *See Singh*, 40 N.Y.3d at 145-47. Plaintiffs' effort to resurrect their unjust enrichment claim thus fails for three different reasons.

## CONCLUSION

This Court should affirm the district court's judgment.

Dated: New York, New York
October 14, 2025

Respectfully submitted,

MURIEL GOODE-TRUFANT
*Corporation Counsel*
*of the City of New York*
Attorney for City Appellees

By: ______________________
JENNIFER LERNER
Assistant Corporation Counsel

100 Church Street
New York, New York 10007
212-356-32551
jlerner@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
JENNIFER LERNER
*of Counsel*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 10,464 words, not including the table of contents, table of authorities, this certificate, and the cover.

JENNIFER LERNER